John Heenan
Joe Cook
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Phone: (406) 839-9091
Fax: (406) 839-9092
john@lawmontana.com
joe@lawmontana.com

Roger Sullivan
Ethan A. Welder
Dustin A. Leftridge
Jinnifer Jeresek Mariman
McGARVEY LAW
345 First Ave. East
Kalispell, MT 59901
Phone: (406) 752-5566
Fax: (406) 752-7124
rsullivan@mcgarveylaw.com
ewelder@mcgarveylaw.com
dleftridge@mcgarveylaw.com
jmariman@mcgarveylaw.com

*Attorneys for Plaintiffs*

**MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY**

| | |
|---|---|
| Estate of Alton Johnson, by and through Randall Johnson as Personal Representative, and | Cause No. |
| | Judge: |
| Estate of Berton Pew, by and through Bryan Zipp as Personal Representative, and | |
| | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Estate of Stanley Webber, by and through Dana Snyder as Personal Representative, | |
| Plaintiffs, | |
| vs. | |
| Whitefish Care and Rehabilitation Center (d/b/a); Sweetwater Whitefish Opco, LLC; Reid Crickmore; and Does A-Z, | |
| Defendants. | |

1

Plaintiffs, through counsel, allege and state upon information and belief:

## INTRODUCTION

1.      This complaint alleges treatment of elders from our community, which is both negligent and a violation of their fundamental right to be treated with human dignity.  It seeks to recover all damages for the suffering and deaths of Alton Johnson, Berton Pew, and Stanley Webber who unnecessarily contracted or died of COVID-19; experienced unnecessary complications related to COVID-19; and/or were neglected, abused, malnourished or otherwise mistreated under the guise of "COVID-19 protocols" as a result of the negligent management and business practices and resulting neglect they suffered while living as residents at Whitefish Care and Rehabilitation Center in Whitefish, Montana. Alton Johnson and the other group members were elder persons or persons with other medical conditions and disabilities requiring rehabilitation and other services from the Defendants' nursing home facility.  The Defendants failed to establish and maintain a basic and reasonable infection prevention and control program, in response to the pandemic, designed to provide and maintain a safe and sanitary environment for this at-risk population of residents. Furthermore, Defendants failed to provide adequate and basic personal care to residents during the pandemic, failed to inform resident representatives of the deteriorating conditions inside the facility, and have concealed their neglect behind COVID-19 restrictions.  Defendants failed their resident population and their loved ones which has resulted in unnecessary suffering, loss of life, potential lifelong health complications, and other injury as a result.

## PARTIES

2.      Plaintiff 1 is the Estate of Alton Johnson, by and through the Estate's Personal Representative, Randall (Randy) Johnson.  Randy Johnson is the son of Alton Johnson and is a

resident of Flathead County, Montana. Alton Johnson was a resident of Flathead County, Montana prior to his death.

3.      Plaintiff 2 is the Estate of Berton Pew, by and through the Estate's Personal Representative, Bryan Zipp. Bryan Zipp is the son-in-law of Berton Pew and is a resident of Flathead County, Montana. Berton Pew was a resident of Flathead County, Montana prior to his death.

4.      Plaintiff 3 is the Estate of Stanley Webber, by and through the Estate's Personal Representative, Dana Snyder. Dana Snyder is the daughter of Stanley Webber and is a resident of Anchor Point, Alaska. Stanley Webber was a resident of Flathead County, Montana prior to his death.

5.      Other Plaintiffs may be named, who are similarly situated individuals, or their Estates, who were injured, suffered, and/or died as a result of the negligent care and mistreatment they incurred while living as residents at Whitefish Care and Rehabilitation Center in Whitefish, Montana.

6.      Defendant Whitefish Care and Rehabilitation Center is an assumed business name under which Sweetwater Whitefish Opco, LLC owns and operates a "long term care facility" and/or "skilled nursing facility" at 1305 E. 7th Street, City of Whitefish, Flathead County, Montana 59937.

7.      Defendant, Sweetwater Whitefish Opco, LLC, d/b/a Whitefish Care and Rehabilitation Center, is, or was, a for-profit limited liability corporation organized and existing under the laws of the State of Montana, doing business at Defendants' facility at 1305 E. 7th Street, City of Whitefish, Flathead County, Montana 59937, and with a principal business office at 662 Encinitas Blvd Ste 230, Encinitas, California 92024-6792. Sweetwater Whitefish Opco, LLC, d/b/a Whitefish Care and Rehabilitation Center, describes itself as a "skilled nursing facility" and

3

upon information and belief is a licensed "long term care facility," as that term is defined under § 50-5-101, MCA. Based on information and belief, Sweetwater Whitefish OPCO, LLC took over ownership and management of the Whitefish Care Rehabilitation Center in May 2019. Sweetwater Care MT Opco LLC is a Nevada for-profit limited liability corporation and is a listed Manger/Member of Sweetwater Whitefish Opco LLC d/b/a Whitefish Care and Rehab Center. Upon information and belief, Sweetwater Care Opco LLC is a Nevada for-profit limited liability corporation and is, along with James Gamett, the Indirect Owner of Sweetwater Whitefish Opco LLC. Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, is a Delaware for-profit limited liability corporation with its principal place of business similarly located at 662 Encinitas Blvd Ste 230, Encinitas, California 92024-6792. Upon information and belief, Defendant, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, is the parent company of Sweetwater Whitefish Opco, LLC, and/or Defendant, Sweetwater Whitefish Opco, LLC is a subsidiary company of Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, and/or Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity company and Sweetwater Whitefish Opco, LLC are affiliated and/or associated entities sharing common  and/or overlapping identity, ownership, financial assets, business assets, management structure, members, and/or principal place of business.

8.      Defendant Reid Andrew Crickmore is the Executive Director and Administrator of Sweetwater Whitefish Opco, LLC, d/b/a the Whitefish Care and Rehabilitation Center in Flathead County, located at 1305 E. 7th St., Whitefish, Montana 59937.  Mr. Crickmore is a resident of Flathead County, Montana.

9.      Defendants Does A-Z are corporations or persons unknown at this time whose negligence and wrongful acts caused injury to Plaintiffs, who were unjustly enriched at the expense of Plaintiffs, or who are otherwise liable for the injuries and damages alleged in this suit.  Plaintiffs

4

will seek to amend their complaint when the true names and capacities of Does A-Z are ascertained.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter pursuant to Rule 4(B), M.R. Civ. P., and venue is proper in Flathead County, Montana.

## ALLEGATIONS COMMON TO ALL COUNTS

11.    Defendants are licensed by the State of Montana to operate a 100-bed care community, whereby they provide senior care services and amenities for facility residents, including: semi-private and private rooms; assistance with non-medical needs: toileting, bathing and grooming; caregivers; meal preparation with special dietary guidelines; alert mobility and care needs, touting exercise, health and wellness programs, activities, outdoor excursions, and transportation; and Memory Care.  Defendants are regulated by the Department of Public Health and Human Services, Quality Assurance Division of Montana.  Defendants are also certified as providers by the Centers for Medicare and Medicaid Services "CMS" (requiring them to follow directives issued by CMS).

12.    In June of 2020, Alton Johnson was admitted to Defendants' facility to undergo rehabilitation for an expected 90 day stay following hip surgery.  In July of 2020, Mr. Pew was admitted to Defendant's facility for Parkinson's Disease, diabetes, and dementia.  In July of 2020, Mr. Webber was admitted to Defendant's facility for memory care due to his dementia. Defendants entered into agreements with Mr. Johnson, Mr. Pew, Mr. Webber, or their agents, and the other similarly impacted individuals, whereby Defendants agreed to provide to Mr. Johnson, Mr. Pew, Mr. Webber, and the other similarly impacted individuals, long-term care including non-medical needs such as dressing, eating and using the bathroom, in addition to preparation and delivery of daily meals and providing patient centered rehabilitation.

5

13.     Mr. Johnson, Mr. Pew, and Mr. Webber received inadequate care and supervision almost immediately upon being admitted to the Defendants' facility as a result of Defendants': failure to provide for the health and safety of its residents; failure to provide for and follow public health guidelines issued by the Montana Department of Public Health and Human Services and the Centers for Medicare and Medicaid on the prevention of COVID-19 at its nursing care facility; noncompliance with infection control requirements; lack of and failure to properly use personal protective equipment; failure to maintain reasonable distancing among residents; inadequate staffing; inadequate training of staff; failure to act with reasonable promptness when residents displayed symptoms of COVID-19; and failure to appropriately respond to complaints, warnings, and violations of regulations, recommendations, and guidelines. As a result, Defendants failed to protect its residents, including the named Plaintiffs and other similarly situated individuals, from COVID-19, associated complications, resultant death, and/or other injuries.

14.     COVID-19 is a respiratory illness that has been declared a worldwide pandemic. Persons with chronic underlying medical conditions are at greater risk for COVID-19. As early as March 2020, the Centers for Disease Control and Prevention issued warnings of potentially deadly outbreaks of COVID-19 in long-term care facilities.

15.     Upon information and belief, a COVID-19 Focused Infection Control Survey was performed at the Defendants' facility in May 2020.  The Survey determined "that Whitefish Care and Rehab had not implemented the CMS and Centers for Disease Control and Prevention (CDC) recommended practices to prepare for COVID-19." As one example, at the time, 58 residents were living at the Defendants' facility and new intakes were mixed into the general population in violation of rules requiring a 14-day isolation period for all new residents.

16.     Upon information and belief, the Defendants' first staff member at its nursing facility tested positive for COVID-19 on August 12, 2020, and the first resident began displaying

6

symptoms on August 16, 2020. Since late August, more than seventy-five percent of its residents tested positive for COVID-19, and COVID-19 related deaths at the facility reached double digits.

17.    Upon information and belief, Defendants' officials reported that by August 21, 2020, 14 residents and staff at the Whitefish Care and Rehabilitation Center had tested positive for COVID-19.  One week later Defendants' officials reported that 41 individuals at the facility were infected with COVID-19, including Mr. Johnson, and four of its residents had died. The number of deaths at the facility has thus far grown to at least 13 residents due to the Defendants' failure to take reasonable measures to control the outbreak or adhere to public health guidelines issued by the Montana Department of Public Health and Human Services, the Centers for Disease Control, and the Centers for Medicare and Medicaid.

18.    On August 31 and September 1, 2020, officials from the Montana Department of Public Health and Human Services conducted a COVID-19 "Focused Control Survey" at the Whitefish Care and Rehabilitation Center.  Although it had been approximately three months since Defendants received notice of non-compliance with COVID-19 guidelines and at least 19 days since Defendants became aware of positive COVID-19 cases at the facility, the survey documented that:

    a.  The facility was still housing COVID-19 positive residents and COVID-19 negative residents in the same rooms;

    b.  Staff were observed entering the rooms of residents, including both those housing COVID-19 positive residents and non-isolation facility rooms, without proper personal protective equipment;

    c.  The facility was still not taking necessary or reasonable measures to maintain or enforce reasonable distancing among residents;

    d.  Staff members were complaining of lack of training by the Defendants' on hand hygiene and use of personal protective equipment, and were complaining of a lack of compliance amongst facility staff members with infection control measures.

7

19.     The August 31 and September 1, 2020 "Focused Infection Control Survey" resulted in a finding of "Immediate Jeopardy," noting that the violations of the Defendants' nursing facility was serious enough to "risk imminent harm to life." The Immediate Jeopardy concerns documented at the facility were:

   a.  Rooming of COVID-19 positive residents with COVID-19 negative residents;

   b.  Non-compliance by housekeeping staff in its use of personal protective equipment while cleaning COVID-19 isolation and non-isolation facility rooms;

   c.  Staff not properly wearing N95 masks when required, or using them improperly when worn in the vicinity of COVID-19 positive residents;

   d.  Lack of adherence to infection control protocols for residents identified as being COVID-19 positive;

   e.  Incorrect safety protocols used by residents with outside visitors;

   f.  Improper masking of COVID-19 positive and negative residents.

20.     The Centers for Medicare and Medicaid Services (CMS) assign an "immediate jeopardy" or "IJ" rating when there is a "situation in which [a] provider's noncompliance…is likely to cause serious injury, harm, impairment, or death to a resident."

21.     Following the survey, and as part of the Plan of Correction, the Defendants' nursing facility was required to bring in a CMS-designated temporary manager to provide "stringent" oversight. The Defendants' facility was also required to implement 26 "corrective actions," due to its "deficient practices" and "unsafe infection control practices" that directly contributed to the spread of the COVID-19 infection within the facility.

22.     Upon information and belief, agency records document that the above issues and infractions are only the most recent among a host of other deficiencies indicating a long standing course of conduct at the Whitefish Care and Rehabilitation Center of failing to meet state and federal regulations and guidelines.  Documents from earlier investigations evidence that residents

at the Defendants' facility have "languished in filthy conditions, including in their own urine and feces, and have gone weeks without receiving a shower or bath, among a myriad of other issues." The health and hygiene of residents plummeted under the ownership and management of the Defendants.

23.    The state found that the Defendants' facility "put the health and lives of residents in jeopardy after failing to protect them from an outbreak of the novel coronavirus that has killed 13 residents and infected 39 others."

24.    The federal report from early September found that the facility committed "severe negligence" at the Defendants' long-term care facility that "directly" contributed to their Covid-19 outbreak.

25.    In a subsequent "Statement of Deficiencies and Plan of Correction," prepared on September 14, 2020 by the Department of Health and Human Services, Centers for Medicare and Medicaid Services, the public was made aware for the first time of Defendant's inexcusable failure to provide for the health and safety of its residents. The Statement of Deficiencies and Plan of Correction indicated in part, "A COVID-19 Focused Infection Control Survey was conducted by the Montana Department of Public Health and Human Services from 8/31/20 to 9/1/20. The facility was NOT in compliance with 42 CFR §483.80 Infection Control and had not implemented the Centers for Medicare and Medicaid Services (CMS) and Centers for Disease Control and Prevention (CDC) recommended practices to prepare for and prevent the spread of COVID-19." The report from the Centers for Medicare and Medicaid Services states that the facility's "noncompliance has placed the health and safety of recipients in its care at risk for serious injury, serious harm, serious impairment of death."

26.    According to the Statement of Deficiencies and Plan of Correction, "on 9/1/20 at 5:35 p.m. an Immediate Jeopardy situation was announced to the Administrator and Director of

Nursing, which was related to F880 - Infection Control. The Immediate Jeopardy was cited at the Severity and Scope of an L (the worst possible rating), and upon removal of the immediacy of the deficient practice, will be lowered to an I. The facility did not remove the immediacy prior to the end of the survey on 9/1/20." The Statement of Deficiencies and Plan of Correction went on to state, "The Immediate Jeopardy concerns identified onsite included:

a. Rooming presumptive COVID-19 positive residents with COVID-19 negative residents;

b. Housekeeping staff not following PPE protocols and cleaning COVID-19 isolation and non-isolation facility rooms during shifts;

c. Staff incorrectly donning and doffing PPE and entering COVID-19 positive resident rooms without proper PPE;

d. Staff were either not using N95 masks when necessary, or using them properly when worn for COVID-19 positive residents;

e. Lack of signage or correct signage for infection control protocols for identified residents;

f. Incorrect safety protocols used by a resident and outside window visitor;

g. Improperly masked COVID-19 positive resident, who had memory deficits, and was within six feet of a COVID-19 negative resident. Staff did not attempt to assist with maintaining social distancing for the residents.

27.    The Statement of Deficiencies and Plan of Correction went on to further state, "The residents identified for this deficient practice included 43 at the level of harm, and 7 residents at risk for the spread of infection, totaling 50 residents."

28.    Alton Johnson was scheduled to be a resident at the Defendants' facility for three months beginning in June of 2020.  From the date of his admission, his children watched their father grow progressively thin, pale, and ultimately to become cognitively unresponsive. Upon his entry, Mr. Johnson was able to stand up on his own with little to no assistance.  However, during his residency he rapidly declined to the point where two people had to hold him up in order to be

able to stand. His good leg had also atrophied, despite his supposed receipt of physical activity and rehabilitation care as a resident at the Defendants' facility. On or about August 18th during a video conference with their father, Mr. Johnson's family observed that he appeared to be uncomfortable and in pain, he was unkempt – as his hair on his head and face was uncharacteristically long – and he had labored breathing. By August 25, 2020, Mr. Johnson tested positive for COVID-19. Although his family had expected and arranged to have Mr. Johnson transferred from the Defendants' facility, this was delayed due to the mandatory 14-day quarantine period. Unfortunately, on Labor Day – one day prior to the families set date to remove him from the facility – Mr. Johnson died from COVID-19-related complications.

29.    Mr. Pew's family was able to visit him only twice, and only through a window, due to COVID-19 protocols. On one of those occasions, they noticed Mr. Pew was unkempt and not dressed in his own clothing. In August of 2020, Mr. Pew developed a fever and was reportedly transferred to a COVID-19 wing. Mr. Pew's family was not notified of the troubling development until the family called the facility to check on his status the following day. Within a week, Mr. Pew had passed away. From the time of his admission until his death on August 27, 2020, Mr. Pew suffered a disturbing deterioration in his health due to Defendant's neglect, ultimately losing approximately 50 pounds. His death certificate lists COVID-19 as one of the causes of his death.

30.    Mr. Webber was in relatively good health before his admission to Defendant's facility in July of 2020. His condition deteriorated rapidly and shockingly due to Defendant's negligence, as can be seen in photographs from September 2020. Mr. Webber was greatly emaciated, his fingernails and toenails were untrimmed, and his hair was dirty and unkept. He was ultimately discovered unconscious on September 8, 2020 and was transferred to the hospital, where he was placed on hospice. From the time of his admission until his death on September 14, 2020, Mr. Webber lost approximately 40 pounds.

31.     Upon information and belief, throughout the above referenced events, Defendant Reid Andrew Crickmore had firsthand on the ground knowledge of the deficiencies at the Whitefish Care and Rehabilitation Center including Defendants' actions and failures to act which led to Plaintiffs' injuries.  In addition, throughout the above referenced events, Mr. Crickmore had knowledge of the dangers associated with COVID-19 and knew of the need to make appropriate changes to the facilities services, supervision, and care in order to prevent the spread of COVID-19.  Nonetheless, Mr. Crickmore and his co-Defendants ignored complaints, guidelines, and agency recommendations and requirements, and allowed the unsafe conditions that existed at the Whitefish Care and Rehabilitation Center to persist until nearly the entire population of residents at the facility had become infected with COVID-19.

32.     Upon information and belief, at least 13 people, including Mr. Johnson, Mr. Pew, and Mr. Webber, have thus far died from a COVID-19 outbreak at Defendant's facility, many others have unnecessarily contracted COVID-19 and will potentially suffer from associated lifelong health complications, and many others have been otherwise injured as a result of the actions and inactions of Defendants.

## CAUSES OF ACTION

### Count 1: Negligence

33.     Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

34.     Defendants owed Alton Johnson, Berton Pew, Stanley Webber, and the other similarly impacted individuals a duty to provide for services, supervision, and care for their general health and safety, which included a duty to establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment, and designed to help prevent the development and transmission of communicable diseases and infections.

35.    Defendants breached their duty of care to Alton Johnson, Berton Pew, Stanley Webber, and the other similarly impacted individuals including by any or all of the following: failing to provide adequate care, services or attention to Plaintiffs; failing to adequately staff and supply its facility; failing to adequately inform and train facility staff; rooming presumptive COVID-19 positive residents with COVID-19 negative residents; not using signage or not using correct signage for infection control protocols; not properly training and supervising Defendants' employees on COVID-19 and infection control, including but not limited to recognizing COVID-19 signs and symptoms, modes of transmission, and screening criteria; not training and supervising Defendants' employees on the proper use of sanitation measures and protocols and the proper use of personal protective equipment (PPE); not properly training and supervising Defendants' employees to assist residents with maintaining social distancing standards, and/or to intervene when residents and visitors were not maintaining social distancing standards; and generally failing to adhere to and follow federal and state guidelines and regulations.

36.    Defendants knew of the dangers associated with COVID-19 and knew of the need to make appropriate changes to its services, supervision, and care, yet Defendant acted with actual malice by either deliberately proceeding to act in conscious, intentional, or reckless disregard of the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, and the other similarly impacted individuals, or deliberately proceeding to act with indifference to the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals.

37.    Defendant Reid Andrew Crickmore was additionally personally negligent and his actions were tortious in nature in declining to take appropriate action to prevent COVID-19 infection among staff and residents at the Whitefish Care and Rehabilitation Center despite his

13

firsthand knowledge of conditions and deficiencies at the facility as well as the dangers associated with COVID-19.

38.    Plaintiffs suffered injuries and damages, including for survival and wrongful death, as a direct and proximate result of Defendants' negligence.

### Count 2: Negligence *Per Se*

39.    Plaintiff incorporates by reference all previously plead paragraphs set forth herein.

40.    Defendants owed Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals a duty to comply with the Montana Elder and Persons With Developmental Disabilities Abuse Prevention Act, set forth in § 52-3-801 et seq., M.C.A., and federal public health regulations set forth in 42 C.F.R. § 483.80(a), (e), or (f).

41.    Defendants breached its duty to Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals by not complying with the foregoing state and federal laws and regulations

42.    The foregoing state and federal laws and regulations were enacted to prevent the abuse and neglect of elderly persons and persons with developmental disabilities. Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals were members of that protected class.

43.    Plaintiffs and the other similarly situated individuals suffered injury and damages, including for survival and wrongful death, as a direct and proximate result of Defendant's negligence *per se*, and their injuries and damages were of the sort which the foregoing state and federal laws and regulations were enacted to prevent.

### Count 3: Breach of Contract and Unjust Enrichment

44.    Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

45.     Defendants entered into agreements, with attendant covenants of good faith and fair dealing, with Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals (and/or their representatives) to provide reasonable and adequate care and services which imposed an obligation to establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment, and designed to help prevent the development and transmission of communicable diseases and infections. Defendants breached the agreement by failing to provide reasonable and adequate care and services and failing to establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment, and designed to help prevent the development and transmission of communicable diseases and infections. Defendants' breach of the agreement with Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals caused Plaintiffs to suffer injuries and attendant damages, all while unjustly enriching Defendants.

### Count 4: Violation of § 30-14-101 *et. seq.*

### (Montana Consumer Protection Act)

46.     Plaintiff incorporates by reference all previously plead paragraphs set forth herein.

47.     The Montana Unfair Trade Practices and Consumer Protection Act of 1973 prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

48.     Alton Johnson, Berton Pew, Stanley Webber, were, at all times relevant, consumers pursuant to the Montana Consumer Protection Act ("MRCA") § 30-14-101 *et. seq.*, MCA.

49.     Defendants engaged in unfair and/or deceptive acts or practices in the conduct of its commerce or trade, including but not limited to: (1) misrepresenting to Alton Johnson, Berton Pew, and Stanley Webber (and/or their representatives) the scope of its abilities, services and capabilities of its staff; (2) misrepresenting and/or omitting the conditions of Alton Johnson,

15

Berton Pew, and Stanley Webber  to avoid losing them as residents; and (3) continuing to retain Alton Johnson, Berton Pew, and Stanley Webber, while concealing dangerous health conditions despite knowing the high risk of injury to Alton Johnson, Berton Pew, and Stanley Webber.

50.     Plaintiffs suffered damages including payment of rents under false promises, physical, emotional, and financial suffering as a result of Defendants' unfair and deceptive acts and conduct towards Alton Johnson, Berton Pew, and Stanley Webber.  Plaintiffs are entitled to an award of all damages available under Montana law.

### Count 5: Violation of Plaintiffs' Right to Dignity

51.     Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

52.     Art. II, Sec. 4, of the Montana Constitution provides that, "The dignity of the human being is inviolable."  The treatment which Plaintiffs received from Defendants degraded and demeaned them as persons, which treatment failed to acknowledge their worth as persons, and which treatment directly violated their constitutional right to dignity.

53.     Plaintiffs suffered injury and damages as a direct and proximate result of Defendants' violation of their constitutional right to dignity.

### Count 6: Wrongful Death

54.     Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

55.     As a direct and proximate result of the actions and inactions of the Defendants as alleged above, Plaintiffs Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals unnecessarily contracted COVID-19, experienced unnecessary complications related to COVID-19, and/or were neglected, abused, malnourished or otherwise mistreated, and have died as a result, incurring that damages alleged herein.  Plaintiffs' heirs have suffered the loss

of consortium, comfort, care, support, society, and companionship of their deceased loved ones and have incurred the damages as alleged herein.

### Count 7: Punitive Damages

56.     Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

57.     Defendants are guilty of actual malice as, defined in § 27-1-221(2), MCA, in that Defendants had knowledge of facts or intentionally, consciously, and recklessly disregarded facts that created a high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals, and Defendants either deliberately proceeded to act in conscious, intentional or reckless disregard of the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, and the other similarly impacted individuals, or deliberately proceeded to act with indifference to the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals.

58.     In order to prevent future repetition by these Defendants or others, an award of punitive damages is appropriate to serve as a judicial exemplar of the consequences that befall those who act with a reckless failure to treat elderly and disabled Montana citizens with the respect and care they deserve and that our society recognizes they are owed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request a judgment against Defendants as follows:

1.     For compensatory damages caused by Defendants to Plaintiffs in an amount to be proven at trial;

2.     For damages, pursuant to MCA § 27-1-513, attendant to survival and wrongful death, including but not limited to loss of consortium, comfort, care, support, society, and companionship;

3.     For treble damages and attorneys' fees pursuant to MCA § 30-14-101 *et. seq.*;

4.    For punitive damages as provided by law in a reasonable amount to be proven at trial;

5.    For costs, interest, and pre-judgment interest as determined by the Court; and

6.    For any and all further legal or equitable relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury in this matter.

Dated this 20th day of October, 2020.

HEENAN & COOK

*/s/John Heenan*
John Heenan
Joe Cook

McGARVEY LAW

*/s/Roger Sullivan*
Roger Sullivan
Dustin A. Leftridge
Ethan A. Welder
Jinnifer Jeresek Mariman

*Attorneys for Plaintiffs*