

COPY

FILED
11/19/2020
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Amanda Mosser
DV-15-2020-0000953-PI
Allison, Robert B
8.00

John Heenan
Joe Cook
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Phone: (406) 839-9091
Fax: (406) 839-9092
john@lawmontana.com
joe@lawmontana.com

Roger Sullivan
Ethan A. Welder
Dustin A. Leftridge
Jinnifer Jeresek Mariman
McGARVEY LAW
345 First Ave. East
Kalispell, MT 59901
Phone: (406) 752-5566
Fax: (406) 752-7124
rsullivan@mcgarveylaw.com
ewelder@mcgarveylaw.com
dleftridge@mcgarveylaw.com
jmariman@mcgarveylaw.com

*Attorneys for Plaintiffs*

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| Estate of Alton Johnson, by and through Randall Johnson as Personal Representative, and<br><br>Estate of Berton Pew, by and through Bryan Zipp as Personal Representative,<br><br>Estate of Stanley Webber, by and through Dana Snyder as Personal Representative,<br><br>Estate of Lonny Matthew Sanford, by and through Sarah Sargent as Personal Representative,<br><br>Daniel Bell,<br><br>Debra Tatum,<br><br>Joan Marie Wilkins, | Cause No. DV-15-2020-0000953-PI<br><br>Judge: Hon. Robert B. Allison<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

1

| | |
|---|---|
| Estate of Verda Johnson, by and through Marcia Schlotfeldt as Personal Representative,<br><br>Estate of Adrian Leonard Kautman Sr., by and through Marie Moore as Personal Representative<br><br>Estate of Alison DeSmyter, by and through Kim Box as Personal Representative, and<br><br>        Plaintiffs,<br><br>  vs.<br><br>Whitefish Care and Rehabilitation Center (d/b/a); Sweetwater Whitefish Opco, LLC; Sweetwater Care MT OPCO, LLC; Sweetwater Care OPCO LLC; Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity; Sweetwater Care Resource, LLC; Reid Crickmore; James Gamett; Aaron Chesley; Kyle Shields; and Does A-Z,<br><br>        Defendants. | |

Pursuant to Rule 15(a)(1), M.R. Civ. P., Plaintiffs file this First Amended Complaint as a matter of course. This First Amended Complaint is filed prior to any responsive pleading having been served by Defendants. Plaintiffs, through counsel, allege and state upon information and belief:

## INTRODUCTION

1. This amended complaint alleges treatment of elders from our community, which is both negligent and a violation of their fundamental right to be treated with human dignity. It seeks to recover all damages for the suffering and deaths of Alton Johnson, Berton Pew, Stanley Webber, Alison DeSmyter, Lonny Matthew Sanders, Adrian Leonard Kautman and Verda Johnson; and injury and suffering of Daniel Bell, Debra Tatum, and Joan Marie Wilkins who unnecessarily contracted or died of COVID-19; experienced unnecessary complications related to COVID-19; and/or were neglected, abused, malnourished or otherwise mistreated, including mistreatment

2

occurring under the guise of "COVID-19 protocols," as a result of the negligent management and business practices and resulting neglect they suffered while living as residents at Whitefish Care and Rehabilitation Center in Whitefish, Montana. Alton Johnson and the other group members were elder persons or persons with other medical conditions and disabilities requiring rehabilitation and other services from the Defendants' nursing home facility. The Defendants failed to establish and maintain a basic and reasonable infection prevention and control program, in response to the pandemic, designed to provide and maintain a safe and sanitary environment for this at-risk population of residents. Furthermore, Defendants failed to provide adequate and basic personal care to residents prior to and during the pandemic, failed to maintain adequate staffing to meet the reasonable care needs of its residents, failed to provide a safe environment, failed to inform resident representatives of the deteriorating conditions inside the facility, and have attempted to conceal their neglect behind COVID-19 restrictions. Defendants failed their resident population and the loved ones of the residents, which has resulted in unnecessary suffering, loss of life, potential lifelong health complications, and other injury as a result.

## PARTIES

2.     Plaintiff 1 is the Estate of Alton Johnson, by and through the Estate's Personal Representative, Randall (Randy) Johnson. Randy Johnson is the son of Alton Johnson and is a resident of Flathead County, Montana. Alton Johnson was a resident of Flathead County, Montana prior to his death.

3.     Plaintiff 2 is the Estate of Berton Pew, by and through the Estate's Personal Representative, Bryan Zipp. Bryan Zipp is the son-in-law of Berton Pew and is a resident of Flathead County, Montana. Berton Pew was a resident of Flathead County, Montana prior to his death.

3

4.      Plaintiff 3 is the Estate of Stanley Webber, by and through the Estate's Personal Representative, Dana Snyder.  Dana Snyder is the daughter of Stanley Webber and is a resident of Anchor Point, Alaska.  Stanley Webber was a resident of Flathead County, Montana prior to his death.

5.      Plaintiff 4 is the Estate of Lonny Matthew Sanford, by and through the Estate's Personal Representative, Sarah Sargent.  Sarah Sargent is the daughter of Lonny Matthew Sanford and is a resident of Flathead County, Montana.  Lonny Matthew Sanford was a resident of Flathead County, Montana prior to his death.

6.      Plaintiff 5 is Daniel Bell. Mr. Bell is a resident of Flathead County, Montana.

7.      Plaintiff 6 is Debra Tatum.  Ms. Tatum is a resident of Flathead County, Montana.

8.      Plaintiff 7 is Joan Marie Wilkins.  Ms. Wilkins is a resident of Flathead County, Montana.

9.      Plaintiff 8 is the Estate of Verda Johnson, by and through the Estate's Personal Representative, Marcia Schlotfeld. Marcia Schlotfeld is the daughter of Verda Johnson and is a resident of Indiana.  At the time of the incident, Ms. Schlotfeld was a resident of Flathead County, Montana.  Verda Johnson was a resident of Flathead County, Montana prior to her death.

10.     Plaintiff 9 is the Estate of Alison DeSmyter, by and through the Estate's Personal Representative, Kim Box. Kim Box is the mother of Alison DeSmyter and is a resident of Flathead County, Montana.  Alison DeSmyter was a resident of Flathead County, Montana prior to her death.

11.     Plaintiff 11 is the Estate of Adrain Leonard Kautman Sr., by and through the Estate's Personal Representative, Marie Moore. Marie Moore is the daughter of Mr. Kautman and is a resident of Maricopa County, Arizona.  Mr. Kautman was a resident of Flathead County, Montana prior to her death.

4

12.    Other Plaintiffs may be named, who are similarly situated individuals, or their Estates, who were injured, suffered, and/or died as a result of the negligent care and mistreatment they incurred while living as residents at Whitefish Care and Rehabilitation Center in Whitefish, Montana.

13.    Defendant Whitefish Care and Rehabilitation Center is an assumed business name under which Sweetwater Whitefish Opco, LLC owns and operates a "long term care facility" and/or "skilled nursing facility" at 1305 E. 7th Street, City of Whitefish, Flathead County, Montana 59937 (referred to herein as the "facility").

14.    Defendant, Sweetwater Whitefish Opco, LLC, d/b/a Whitefish Care and Rehabilitation Center, is, or was, a for-profit limited liability corporation organized and existing under the laws of the State of Montana, doing business at Defendants' facility at 1305 E. 7th Street, City of Whitefish, Flathead County, Montana 59937, and with a principal business office at 662 Encinitas Blvd Ste 230, Encinitas, California 92024-6792. Sweetwater Whitefish Opco, LLC, d/b/a Whitefish Care and Rehabilitation Center, describes itself as a "skilled nursing facility" and upon information and belief is a licensed "long term care facility," as that term is defined under § 50-5-101, MCA. Upon information and belief, Sweetwater Whitefish OPCO, LLC took over ownership and management of the Whitefish Care and Rehabilitation Center in May 2019. Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC is a Nevada for-profit limited liability corporation and is a listed Manger/Member of Sweetwater Whitefish Opco, LLC d/b/a Whitefish Care and Rehabilitation Center. Upon information and belief, Sweetwater Care Opco, LLC is a Nevada for-profit limited liability corporation and is, along with James Gamett, the Indirect Owner of Sweetwater Whitefish Opco LLC. Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, is a Delaware for-profit limited liability corporation with its principal place of business similarly located at 662 Encinitas Blvd Ste 230, Encinitas, California 92024-6792. Upon

information and belief: Defendant, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, is the parent company of Sweetwater Whitefish Opco, LLC, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, and Sweetwater Care Opco, LLC; and/or Defendant, Sweetwater Whitefish Opco, LLC, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, and Sweetwater Care Opco, LLC are subsidiary companies of Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity; and/or Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity company, Sweetwater Whitefish Opco, LLC, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, and Sweetwater Care Opco, LLC are affiliated and/or associated entities. Upon information and belief, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity company, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, and Sweetwater Whitefish Opco, LLC share common and/or overlapping identity, ownership, financial assets, business assets, management structure, members, offices, accounting, and/or principal place of business with each other and with the other Sweetwater entities referenced in this Complaint and/or that have yet to be discovered.

15.    Defendant Sweetwater Care MT Opco, LLC is a Nevada LLC and is a listed Manager/Member of Sweetwater Whitefish Opco, LLC d/b/a Whitefish Care and Rehabilitation Center. James Gamett is listed with the Nevada Secretary of State as the registered agent of this entity. James Gamett and Aaron Chesley are listed as the managers of this entity.

16.    Upon information and belief, Defendant, Sweetwater Care Opco, LLC is, or was, a Nevada LLC and is, along with James Gamett, an Indirect Owner of Sweetwater Whitefish Opco LLC. There is also an associated/alter ego entity registered in Nevada with the name of Sweetwater Care Propco, LLC. These entities both have an individual named Jason Gamett listed as their registered agent. The Managing Members of both entities are listed as AJC Healthcare, LLC and JBG Partners, LLC. AJC Healthcare, LLC is reportedly a Utah entity owned and

managed by Aaron John Chesley. JBG Partners, LLC is reportedly a Nevada entity owned and managed by both James Bunker Gamett and Jason Gamett.

17.    Defendant Sweetwater Care Resource, LLC is a California LLC with its principal place of business similarly located at 662 Encinitas Blvd., Suite 230, Encinitas, California 92024-6792. This entity is owned and managed by Defendants James Gamett and Aaron Chesley. Kyle Shields is listed with the California Secretary of State as the Controller of Sweetwater Care Resource, LLC.

18.    Defendant Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, is a Delaware LLC with its principal place of business similarly located at 662 Encinitas Blvd., Suite 230, Encinitas, California 92024-6792.  Upon information and belief: Defendant, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, is the parent company of Sweetwater Whitefish Opco, LLC, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, and Sweetwater Care Resource, LLC; and/or Defendant, Sweetwater Whitefish Opco, LLC, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC are subsidiary companies of Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity; and/or Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity company, Sweetwater Whitefish Opco, LLC, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC are affiliated and/or associated entities. Upon information and belief, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity company, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC and Sweetwater Whitefish Opco, LLC share common and/or overlapping identity, ownership, financial assets, business assets, management structure, members, offices, accounting,

7

and/or principal place of business. Upon information and belief, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity is an owner, primary shareholder, parent company, or affiliated/associated entity of numerous other Sweetwater LLCs created under the laws of Montana (Sweetwater GF Opco, LLC, Sweetwater GF Propco, LLC, Sweetwater Butte Opco, LLC, Sweetwater Dillon Opco LLC, Sweetwater Dillon Propco, LLC) and other States (Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC) for the purpose of owning, managing, operating and channeling income from at least three other similar care facilities across Montana (Continental Care and Rehabilitation Center in Butte, Park Place Transitional Care and Rehabilitation Center in Great Falls, and Pioneer Care and Rehabilitation Center in Dillon). Upon information and belief, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity is an owner, primary shareholder, parent company, or affiliated/associated entity of numerous other Sweetwater LLCs created under the laws of this and other State's for the purpose of owning, managing, and operating, and channeling income from this and other similar care facilities across the nation. Upon information and belief, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity company, Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC, and Sweetwater Whitefish Opco, LLC share common and/or overlapping identity, ownership, financial assets, business assets, management structure, members, offices, accounting, and/or principal place of business with these other Sweetwater LLCs which were created for the purpose of owning, managing, operating, and channeling income from this and other similar care facilities in this and other Counties and States.

19.     Defendant Reid Andrew Crickmore is the Executive Director and Administrator of Sweetwater Whitefish Opco, LLC, d/b/a the Whitefish Care and Rehabilitation Center in Flathead

County, located at 1305 E. 7th St., Whitefish, Montana 59937. Mr. Crickmore is a resident of Flathead County, Montana. Mr. Crickmore also serves as Executive Director for at least one other Sweetwater nursing home, which is located in Great Falls, hundreds of miles away, known as Sweetwater GH Opco, LLC d/b/a Park Place Transitional Care.

20. Defendant James Gamett is an owner of Sweetwater Whitefish Opco, LLC, managing partner of Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, owner of Whitefish Care Holdings, LLC, and based on information and belief has ownership interests, financial interests, and/or management positions in each of the Defendant entities referenced in this complaint. Mr. Gamett was also listed as the registered agent of Sweetwater Whitefish Opco, LLC until this was formally changed with the Montana Secretary of State on November 9, 2020, following the filing of Plaintiffs' initial Complaint. Upon information and belief, Mr. Gamett is an owner of numerous other Sweetwater LLCs created under the laws of Montana (Sweetwater GF Opco, LLC, Sweetwater GF Propco, LLC, Sweetwater Butte Opco, LLC, Sweetwater Dillon Opco LLC, Sweetwater Dillon Propco, LLC) and other States (Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC) for the purpose of owning, managing, operating, and channeling income and profits from this facility and at least three other similar care facilities across Montana (Continental Care and Rehabilitation Center in Butte, Park Place Transitional Care and Rehabilitation Center in Great Falls, and Pioneer Care and Rehabilitation Center in Dillon). Upon information and belief, Mr. Gamett has ownership interests, financial interests, and/or management positions in numerous other Sweetwater entities created under the laws of other State's for the purpose of owning, managing, operating, and channeling income from this and other similar care facilities across the nation. Upon information and belief, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity company,

Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC, Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC and Sweetwater Whitefish Opco, LLC share common and/or overlapping identity, ownership, financial assets, business assets, management structure, members, offices, accounting, and/or principal place of business with each other and with the other Sweetwater LLCs which were created for the purpose of owning, managing, and operating, and channeling income from, this and other similar care facilities in other Counties and States. Mr. Gamett is also listed as the Managing Partner and Founder of Sweetwater Capital Partners, which, upon on information and belief, is another associated/alter ego entity with a similar common identity. Upon information and belief, Mr. Gamett has management and ownership interests in a myriad of other Sweetwater entities created in multiple states, for which the relevance and relation to this action has yet to be discovered, including Sweetwater Capital Advisors, Sweetwater Capital Advisors, LLC, SW Secondaries II B, LLC, Sweetwater Revelation, LLC, and Sweetwater Secondaries Fund II GP, LLC. Based on information and belief, Mr. Gamett is a resident of San Diego County, California.

21.    Defendant Aaron Chesley is an owner of Sweetwater Whitefish Opco, LLC, Co-Founder CEO of Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, and Sweetwater Care Opco LLC, Manager of Sweetwater Care MT Opco, LLC, Owner and Manager of AJC Healthcare, LLC and, based on information and belief, has ownership interests, financial interests, and/or management positions in each of the defendant entities referenced in this complaint and other associated entities including Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC. Based on information and belief, Mr. Chesley is a resident of Wasatch County, Utah.

22.    Defendant Kyle Shields is the Chief Financial Officer of Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, and Sweetwater Care Opco, LLC and, based on information and belief, has ownership interests, financial interests, and/or management positions in other defendant

10

entities referenced in this complaint. Mr. Shields is listed with the California Secretary of State as the Controller of Sweetwater Care Resource, LLC. Based on information and belief, Mr. Shields is a resident of San Diego County, California.

23.     Defendants Does A-Z are corporations or persons unknown at this time whose negligence and wrongful acts caused injury to Plaintiffs, who were unjustly enriched at the expense of Plaintiffs, or who are otherwise liable for the injuries and damages alleged in this suit. Plaintiffs will seek to amend their complaint when the true names and capacities of Does A-Z are ascertained.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over this matter pursuant to Rule 4(B), M.R. Civ. P., and venue is proper in Flathead County, Montana.

## ALLEGATIONS COMMON TO ALL COUNTS

25.     Defendants are licensed by the State of Montana to operate a 100-bed care facility, whereby they provide senior care services and amenities for facility residents, including: semi-private and private rooms; assistance with non-medical needs: toileting, bathing and grooming; caregivers; meal preparation with special dietary guidelines; alert mobility and care needs, touting exercise, health and wellness programs, activities, outdoor excursions, and transportation; and Memory Care. Defendants' facility is regulated by the Department of Public Health and Human Services, Quality Assurance Division of Montana. Defendants' facility is also certified as a provider by the Centers for Medicare and Medicaid Services "CMS" (requiring it to follow directives issued by CMS).

26.     In June of 2020, Alton Johnson was admitted to Defendants' facility to undergo rehabilitation for an expected 90 day stay following hip surgery. In July of 2020, Mr. Pew was admitted to Defendant's facility as a result of his Parkinson's Disease, diabetes, and dementia. In

11

July of 2020, Mr. Webber was admitted to Defendant's facility for memory care due to his dementia. In July 2020, Lonny Matthew Sanford was admitted to Defendants' facility due to seizures and respiratory disease. In June of 2020, Mr. Bell was admitted to Defendants' facility to undergo rehabilitation following a spinal cord injury. In March of 2020, Ms. Tatum was admitted to Defendants' facility to undergo rehabilitation following a spinal cord injury. Ms. Wilkins was admitted to Defendants' facility due to illness in June of 2020. Ms. Johnson had been a resident at Defendants' facility for 10-years prior to her contracting COVID-19 at the facility in August of 2020 and dying as a result. Ms. DeSmyter had been a resident at the Defendants' facility for five years due to her cerebral palsy where she Contracted COVID-19 in August of 2020 and died as a result. Mr. Anderson was admitted to Defendants' facility to undergo short-term rehabilitation in January 2020, following a fall and minor stroke. Mr. Kautman was admitted to Defendants' facility following a stroke to receive rehabilitation. Defendants entered into, or assumed the terms of, agreements with Mr. Johnson, Mr. Pew, Mr. Webber, Ms. DeSmyter, Mr. Sanford, Mr. Bell, Ms. Tatum, Ms. Wilkins, Ms. Johnson, Mr. Kautman and/or their agents, and the other similarly impacted individuals, whereby Defendants agreed to provide to Mr. Johnson, Mr. Pew, Mr. Webber, Ms. DeSmyter, Mr. Sanford, Mr. Bell, Ms. Tatum, Ms. Wilkins, Ms. Johnson, , Mr. Kautman and the other similarly impacted individuals with long-term care including non-medical needs such as dressing, eating, personal care, bathroom and bathing assistance, preparation and delivery of daily meals, and providing patient centered rehabilitation.

27.    Mr. Johnson, Mr. Pew, Mr. Webber, Ms. DeSmyter, Mr. Sanford, Mr. Bell, Ms. Tatum, Ms. Wilkins, Ms. Johnson, and Mr. Kautman received inadequate care and supervision almost immediately upon Defendants' assumption of responsibility for their care as a result of Defendants': failure to provide minimal funding, staffing, and management necessary to ensure residents were receiving reasonable care in regard to showers/bathing, proper nutrition, physical

therapy and activity, turning of patients that required these services to avoid the development of bed sores, clean and sanitary rooms, bathrooms, clothes, and sheets, regular changing of briefs, catheters, and necessary medical equipment, facility maintenance, cleanliness, and sterilization of the facility, equipment, and appliances, regular bathroom visits for those who require bathroom assistance, responsiveness to patient call lights/assistance requests, responsiveness to family member inquiries, skin and wound care, prevention of infections including those of the urinary tract and open sores, meeting medical and medication needs of clients, and otherwise ensuring the safety and health of the residents;; failure to provide for and follow public health guidelines issued by the Montana Department of Public Health and Human Services and the Centers for Medicare and Medicaid regarding the prevention of COVID-19 at its nursing care facility; noncompliance with infection control requirements; lack of, and failure to, properly use personal protective equipment; failure to maintain reasonable distancing among residents; inadequate staffing; inadequate training of staff; failure to act with reasonable promptness when residents or staff displayed symptoms of COVID-19; failure to timely and appropriately test for COVID-19 infection among residents and staff; and failure to appropriately respond to complaints, warnings, and violations of regulations, recommendations, and guidelines. As a result, Defendants failed to protect the residents of the Whitefish Care and Rehabilitation Center, including the named Plaintiffs and other similarly situated individuals, from COVID-19, associated complications, resultant death, and/or other injuries.

28.    COVID-19 is a respiratory illness that has been declared a worldwide pandemic. Persons with chronic underlying medical conditions are at greater risk for COVID-19. As early as March 2020, the Centers for Disease Control and Prevention issued warnings of potentially deadly outbreaks of COVID-19 in long-term care facilities.

13

29.     Upon information and belief, a COVID-19 Focused Infection Control Survey was performed at the Defendants' facility in May 2020. The Survey determined "that Whitefish Care and Rehabilitation Center had not implemented the CMS and Centers for Disease Control and Prevention (CDC) recommended practices to prepare for COVID-19." As one example, at the time, 58 residents were living at the Defendants' facility and new intakes were mixed into the general population in violation of rules requiring a 14-day isolation period for all new residents.

30.     Upon information and belief, the Defendants' first staff member at its nursing facility tested positive for COVID-19 on August 12, 2020, and the first resident began displaying symptoms on August 16, 2020. Since late August, more than seventy-five percent of its residents tested positive for COVID-19, and COVID-19 related deaths at the facility reached double digits.

31.     Upon information and belief, Defendants' officials reported that by August 21, 2020, 14 residents and staff at the Whitefish Care and Rehabilitation Center had tested positive for COVID-19. One-week later Defendants' officials reported that 41 individuals at the facility were infected with COVID-19, including Mr. Johnson, and four of its residents had died. The number of deaths at the facility has thus far grown to at least 13 residents due to the Defendants' failure to take reasonable measures to control the outbreak or adhere to public health guidelines issued by the Montana Department of Public Health and Human Services, the Centers for Disease Control, and the Centers for Medicare and Medicaid.

32.     On August 31 and September 1, 2020, officials from the Montana Department of Public Health and Human Services conducted a COVID-19 "Focused Control Survey" at the Whitefish Care and Rehabilitation Center. Although it had been approximately three months since Defendants received notice of non-compliance with COVID-19 guidelines and at least 19 days since Defendants became aware of positive COVID-19 cases at the facility, the survey documented that:

a. The facility was still housing COVID-19 positive residents and COVID-19 negative residents in the same rooms;

b. Staff were observed entering the rooms of residents, including both those housing COVID-19 positive residents and non-isolation facility rooms, without proper personal protective equipment;

c. The facility was still not taking necessary or reasonable measures to maintain or enforce reasonable distancing among residents;

d. Staff members were complaining of lack of training by the Defendants' on hand hygiene and use of personal protective equipment, and were complaining of a lack of compliance amongst facility staff members with infection control measures.

33. The August 31 and September 1, 2020 "Focused Infection Control Survey" resulted in a finding of "Immediate Jeopardy," noting that the violations of the Defendants' nursing facility was serious enough to "risk imminent harm to life." The Immediate Jeopardy concerns documented at the facility were:

a. Rooming of COVID-19 positive residents with COVID-19 negative residents;

b. Non-compliance by housekeeping staff in its use of personal protective equipment while cleaning COVID-19 isolation and non-isolation facility rooms;

c. Staff not properly wearing N95 masks when required, or using them improperly when worn in the vicinity of COVID-19 positive residents;

d. Lack of adherence to infection control protocols for residents identified as being COVID-19 positive;

e. Incorrect safety protocols used by residents with outside visitors;

f. Improper masking of COVID-19 positive and negative residents.

34. The Centers for Medicare and Medicaid Services (CMS) assign an "immediate jeopardy" or "IJ" rating when there is a "situation in which [a] provider's noncompliance...is likely to cause serious injury, harm, impairment, or death to a resident."

35. Following the survey, and as part of the Plan of Correction, the Defendants' nursing facility was required to bring in a CMS-designated temporary manager to provide "stringent"

oversight. The Defendants' facility was also required to implement 26 "corrective actions," due to its "deficient practices" and "unsafe infection control practices" that directly contributed to the spread of the COVID-19 infection within the facility.

36.     Upon information and belief, agency records document that the above issues and infractions are only the most recent among a host of other deficiencies indicating a long-standing course of conduct at the Whitefish Care and Rehabilitation Center of failing to meet state and federal regulations and guidelines. Documents from earlier investigations evidence that residents at the Defendants' facility have "languished in filthy conditions, including in their own urine and feces, and have gone weeks without receiving a shower or bath, among a myriad of other issues." The health and hygiene of residents plummeted under the ownership and management of the Defendants.

37.     The state found that the Defendants' facility "put the health and lives of residents in jeopardy after failing to protect them from an outbreak of the novel coronavirus that has killed 13 residents and infected 39 others."

38.     The federal report from early September found that the facility committed "severe negligence" at the Defendants' long-term care facility that "directly" contributed to their Covid-19 outbreak.

39.     In a subsequent "Statement of Deficiencies and Plan of Correction," prepared on September 14, 2020 by the Department of Health and Human Services, Centers for Medicare and Medicaid Services, the public was made aware for the first time of Defendant's inexcusable failure to provide for the health and safety of its residents. The Statement of Deficiencies and Plan of Correction indicated in part, "A COVID-19 Focused Infection Control Survey was conducted by the Montana Department of Public Health and Human Services from 8/31/20 to 9/1/20. The facility was NOT in compliance with 42 CFR §483.80 Infection Control and had not implemented the

Centers for Medicare and Medicaid Services (CMS) and Centers for Disease Control and Prevention (CDC) recommended practices to prepare for and prevent the spread of COVID-19." The report from the Centers for Medicare and Medicaid Services states that the facility's "noncompliance has placed the health and safety of recipients in its care at risk for serious injury, serious harm, serious impairment of death."

40.     According to the Statement of Deficiencies and Plan of Correction, "on 9/1/20 at 5:35 p.m. an Immediate Jeopardy situation was announced to the Administrator and Director of Nursing, which was related to F880 - Infection Control. The Immediate Jeopardy was cited at the Severity and Scope of an L (the worst possible rating), and upon removal of the immediacy of the deficient practice, will be lowered to an I. The facility did not remove the immediacy prior to the end of the survey on 9/1/20." The Statement of Deficiencies and Plan of Correction went on to state, "The Immediate Jeopardy concerns identified onsite included:

    a.   Rooming presumptive COVID-19 positive residents with COVID-19 negative residents;

    b.   Housekeeping staff not following PPE protocols and cleaning COVID-19 isolation and non-isolation facility rooms during shifts;

    c.   Staff incorrectly donning and doffing PPE and entering COVID-19 positive resident rooms without proper PPE;

    d.   Staff were either not using N95 masks when necessary, or using them properly when worn for COVID-19 positive residents;

    e.   Lack of signage or correct signage for infection control protocols for identified residents;

    f.   Incorrect safety protocols used by a resident and outside window visitor;

    g.   Improperly masked COVID-19 positive resident, who had memory deficits, and was within six feet of a COVID-19 negative resident. Staff did not attempt to assist with maintaining social distancing for the residents.

41.   The Statement of Deficiencies and Plan of Correction went on to further state, "The residents identified for this deficient practice included 43 at the level of harm, and 7 residents at risk for the spread of infection, totaling 50 residents."

42.   Alton Johnson was scheduled to be a resident at the Defendants' facility for three months beginning in June of 2020. From the date of his admission, his children watched their father grow progressively thin, pale, and ultimately to become cognitively unresponsive. Upon his entry, Mr. Johnson was able to stand up on his own with little to no assistance. However, during his residency he rapidly declined to the point where two people had to hold him up in order to be able to stand. His good leg had also atrophied, despite his supposed receipt of physical activity and rehabilitation care as a resident at the Defendants' facility. On or about August 18th during a video conference with their father, Mr. Johnson's family observed that he appeared to be uncomfortable and in pain, he was unkempt – as his hair on his head and face was uncharacteristically long – and he had labored breathing. By August 25, 2020, Mr. Johnson tested positive for COVID-19. Although his family had expected and arranged to have Mr. Johnson transferred from the Defendants' facility, this was delayed due to the mandatory 14-day quarantine period. Unfortunately, on Labor Day – one day prior to the families set date to remove him from the facility – Mr. Johnson died from COVID-19-related complications.

43.   Mr. Pew's family was able to visit him only twice, and only through a window, due to COVID-19 protocols. On one of those occasions, they noticed Mr. Pew was unkempt and not dressed in his own clothing. In August of 2020, Mr. Pew developed a fever and was reportedly transferred to a COVID-19 wing. Mr. Pew's family was not notified of the troubling development until the family called the facility to check on his status the following day. Within a week, Mr. Pew had passed away. From the time of his admission until his death on August 27, 2020, Mr. Pew

suffered a disturbing deterioration in his health due to Defendant's neglect, ultimately losing approximately 50 pounds. His death certificate lists COVID-19 as one of the causes of his death.

44.    Mr. Webber was in relatively good health before his admission to Defendant's facility in July of 2020. His condition deteriorated rapidly and shockingly due to Defendant's negligence, as can be seen in photographs from September 2020. Mr. Webber was greatly emaciated, his fingernails and toenails were untrimmed, and his hair was dirty and unkept. He was ultimately discovered unconscious on September 8, 2020 and was transferred to the hospital, where he was placed on hospice. From the time of his admission until his death on September 14, 2020, Mr. Webber lost approximately 40 pounds.

45.    Mr. Sanford was admitted to Defendants' facility in July 2020, for an expected 21-day period of rehabilitation. He was not allowed to leave the Defendants' facility after 21-days due to the COVID-19 outbreak at the Defendants' facility. His family members were able to see him on one occasion through a window. Shortly afterwards, his family received a text message from Defendants stating that Mr. Sanford was doing well. Several days later, his family was told that Mr. Sanford was "unresponsive" and that he was being transferred to the hospital. Several days after his admission to the hospital, Mr. Sanford died as a result of COVID-19 and resultant respiratory failure.

46.    Mr. Bell was transferred from Kalispell Regional Medical Center (KRMC) to Defendants' facility in June 2020 for continued rehabilitation following a motor vehicle collision where he sustained spinal cord injuries resulting in his paralysis from the shoulder blades down. While at KRMC, Mr. Bell made substantial progress towards regaining his mobility and the functionality of his legs. At Defendants' facility, Mr. Bell received very infrequent and minimal stretching therapies and did not receive the physical therapy, physical activity, or care necessary or recommended by his doctors at KRMC. As a result, Mr. Bell's condition deteriorated

significantly since his transfer to Defendants' facility and he further regressed in regaining his mobility achieved during an initial 30-day stay at KRMC. Due to Defendants' insufficient care, Mr. Bell developed stage 4 bed sores that progressed to the tunneling process, creating gaping holes in his body. In addition, Mr. Bell contacted a MRSA urinary tract infection as a result of unsanitary conditions, infrequent brief changing, and infrequent changing of his catheter bag which has backed up into his body on multiple occasions. Mr. Bell reports that he has received very infrequent medical consultations during his stay at the facility. In early November, Mr. Bell was transferred to North Valley Hospital because of the severity of bed sores. His sores have now become severely infected and it is believed that the infection has spread to his bone and will require surgery to correct with a one-year period of recovery post-surgery. In addition, Mr. Bell was advised that the MRSA infection has now spread throughout his body. At North Valley, Mr. Bell was stabilized and placed on intravenous antibiotics and was eventually transferred back to Defendants' facility where his treatments continue. Mr. Bell also contracted COVID-19 while at Defendants' facility.

47.     Ms. Tatum was admitted to Defendants' facility in March 2020, following an accident injuring her spinal cord and rendering her quadriplegic. Her intent in transferring to Defendants' facility was to obtain physical therapy that would then enable her to transition to a spinal cord rehabilitation facility. During her time at Defendants' facility, Ms. Tatum has not received reasonable physical therapy and activity services, medical treatment, bathing/showering, sanitary living conditions, or brief and catheter changing services. As a result of the lack of reasonable care, physical therapy and rehabilitation services, and staffing at Defendants' facility, Ms. Tatum's physical condition has greatly deteriorated, her hopes, progress towards, and potential of, regaining mobility have been seriously impaired, and she has endured numerous infections including COVID-19. In addition, due to the Defendants' refusal to provide Ms. Tatum with

necessary motions treatment for vertigo, she ended up falling out of her wheelchair during a bout of vertigo and fractured her ankle, which will require future surgery to correct.

48.    Ms. Wilkins was admitted to Defendants' facility in June 2020, following a brief admission at a local hospital due to illness for 24-hour nursing care and supervision. Following her admission to the Defendants' facility, Ms. Wilkins contracted lice and her head was shaved without her family's permission. Ms. Wilkins reported to her daughter, Michelle Wilkins, that she was routinely neglected, was abused, and was forced to lie on dirty mattresses that were unmade for hours on end. Additionally, all of Ms. Wilkins personal belongings were stolen or misplaced at Defendants' facility and have not been accounted for to date. Thankfully, her family was finally able to facilitate Ms. Wilkins transfer to Brendan House, a long-term care nursing facility in Flathead County, MT where Ms. Wilkins is attempting recovery from the abuse and neglect she suffered during her stay at Defendants' facility.

49.    Ms. Johnson had been a resident for 10-years prior to the COVID-19 outbreak occurring at the Defendants' facility. On August 17, 2020, a family member (Marcia Schlotfeldt, the Personal Representative of the Estate) received a phone call from one of the Defendants' employees advising that her mother had been placed in a COVID-wing at the facility. Ms. Johnson then died on August 28, 2020. Her Death Certificate identifies causes of death as COVID-19, respiratory failure and dementia (in same order). However, Ms. Johnson's family was never told by Defendants' employees that their mother died. In fact, the family learned of their mother's demise from the funeral home who handled arrangements following her death.

50.    Ms. DeSmyter had been a resident for 5-years prior to the COVID-19 outbreak occurring at the Defendants' facility. Ms. DeSmyter suffered from cerebral palsy, required 24-hour nursing care and was unable to self-transfer. Ms. DeSmyter was transferred to the Defendants' facility in 2015. Ms. DeSmyter contracted COVID-19 at Defendants' facility on

21

August 28, 2020. Ms. DeSmyter was transferred to the hospital the night of August 30th and she died from COVID-19 on September 8, 2020. Prior to her contracting COVID-19, Ms. DeSmyter suffered from a lack of reasonable care at the facility resulting in insufficient bathing/showering, bathroom assistance, and cleanly living conditions. In addition, staff at the facility did not ensure Ms. DeSmyter was properly wearing her bi-pap mask at night as per physician's orders, or even ensure that she had access to parts necessary to the operation of the bi-pap machine, , which can contribute to respiratory dysfunction.

51.    Mr. Kautman became a resident at the Defendants' facility on July 22nd, 2020. He was transferred to Defendants' facility from Heritage Place nursing home in Kalispell. He was admitted to Heritage Place nursing home following a stroke in April of 2019. In early September 2020, Mr. Kautman contracted COVID-19 at Defendants' facility. On September 9, 2020, Mr. Kautman was transferred from the Defendants' facility to Kalispell Regional Medical Center due to low oxygen saturation levels. Hospital officials advised Mr. Kautman's children that all they could do at that point was to intubate their father due to his severely diminished oxygen saturation levels. Mr. Kautman died at KRMC as a result of his COVID-19 infection shortly after admission.

52.    Upon information and belief, throughout the above referenced events, Defendant Reid Andrew Crickmore was charged with executing Defendants' non-medical business and management decisions at the Whitefish Care and Rehabilitation Center. Mr. Crickmore had firsthand on the ground knowledge of the resulting deficiencies at the Whitefish Care and Rehabilitation Center including Defendants' actions and failures to act which led to Plaintiffs' injuries. In addition, throughout the above referenced events, Mr. Crickmore had knowledge of the dangers associated with COVID-19 and knew of the need to make appropriate changes to the facilities services, supervision, and care in order to prevent the spread of COVID-19. Nonetheless, Mr. Crickmore and his co-Defendants ignored complaints, guidelines, and agency

22

recommendations and requirements, and allowed the unsafe conditions that existed at the Whitefish Care and Rehabilitation Center to persist until nearly the entire population of residents at the facility had become infected with COVID-19.

53.     Upon information and belief, at least 13 people, including Mr. Johnson, Mr. Pew, Mr. Webber, Ms. DeSmyter, Mr. Sanford, Ms. Johnson and Mr. Kautman, have thus far died from a COVID-19 outbreak at Defendant's facility, many others, including Mr. Bell and Ms. Tatum have unnecessarily contracted COVID-19 and will potentially suffer from associated lifelong health complications, and many others have been otherwise injured as a result of the actions and inactions of Defendants including Mr. Bell, Ms. Tatum, and Ms. Wilkins.

## CAUSES OF ACTION

### Count 1: Negligent Care

54.     Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

55.     Defendants owed Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly impacted individuals a duty to provide for services, supervision, and care for their general health and safety, which included a duty to establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment, and designed to help prevent the development and transmission of communicable diseases and infections.

56.     Defendants breached their duty of care to Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman, and the other similarly impacted individuals including by any or all of the following: failing to provide adequate care, services or attention to Plaintiffs; failing to adequately staff and supply its facility; failing to adequately inform and train facility

23

staff; rooming presumptive COVID-19 positive residents with COVID-19 negative residents; not using signage or not using correct signage for infection control protocols; not properly training and supervising Defendants' employees on COVID-19 and infection control, including but not limited to recognizing COVID-19 signs and symptoms, modes of transmission, and screening criteria; not training and supervising Defendants' employees on the proper use of sanitation measures and protocols and the proper use of personal protective equipment (PPE); not properly training and supervising Defendants' employees to assist residents with maintaining social distancing standards, and/or to intervene when residents and visitors were not maintaining social distancing standards; and generally failing to adhere to and follow federal and state guidelines and regulations.

57.    Defendants knew of the dangers associated with COVID-19 and knew of the need to make appropriate changes to its services, supervision, and care, yet Defendants acted with actual malice by either deliberately proceeding to act in conscious, intentional, or reckless disregard of the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly impacted individuals, or deliberately proceeding to act with indifference to the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, and the other similarly situated individuals.

58.    Defendant Reid Andrew Crickmore was additionally personally negligent and his actions were tortious in nature in declining to take appropriate action to prevent COVID-19 infection among staff and residents at the Whitefish Care and Rehabilitation Center despite his firsthand knowledge of conditions and deficiencies at the facility as well as the dangers associated with COVID-19.

24

59. Plaintiffs suffered injuries and damages, including for survival and wrongful death, as a direct and proximate result of Defendants' negligence.

**Count 2: Negligent Management**

60. Plaintiff incorporates by reference all previously plead paragraphs set forth herein.

61. Defendants made and executed non-medical business and management decisions with the motivation of reducing the cost of operation of the Defendants Sweetwater facilities in Montana, including the Whitefish Care and Rehabilitation Center.

62. These non-medical business and management decisions included: greatly reducing staffing and the number of staff members present during facility operation; hiring and assigning a single administrator to manage multiple facilities located hundreds of miles apart; failing to provide, fund, or arrange proper training of their staff regarding disease prevention, COVID-19 protocols and recommendations, and reasonable care of assistance dependent residents; failing to provide and mandate the use of available personal protective equipment and COVID-Testing; failing to mandate that staff adhere to disease and illness protection requirements and guidelines; failing to properly equip the facility with appropriate PPE and other medical and care equipment; and failing to adequately maintain, clean, and sterilize the facility.

63. These non-medical business and management decisions resulted in a failure of reasonable care for the residents including in regards to: showers/bathing; ensuring proper nutrition; physical therapy and activity; turning of patients that required these services to avoid the development of bed sores; clean and sanitary rooms, bathrooms, clothes, and sheets; regular changing of briefs, catheters, catheter bags, and necessary medical equipment and devices; maintenance, cleanliness, and sterilization of the facility, equipment, and appliances; regular bathroom visits for those who require bathroom assistance; responsiveness to patient call lights/assistance requests; responsiveness to family member inquiries and complaints; appropriate

25

disease prevention requirements, regulations, recommendations, and protocols; maintaining appropriate distancing between residents during the COVID-19 pandemic; separation of COVID-19 positive residents from COVID-19 negative residents; preventing the spread of COVID-19 transmission between and among residents and staff; preventing other infections including those of the urinary tract and open sores; meeting medical needs of clients; and otherwise ensuring the safety and health of the residents.

64.    Because of the Defendants business decision to greatly reduce on-shift staff members alone, the hard-working CNAs and RNs at the facility were unable to meet their reasonable care obligations to the Residents.  As a result, residents would: regularly go long periods without being bathed; not have clean and sanitary clothes, bedsheets, rooms, or bathrooms; not receive personal care within a reasonable schedule; not receive timely brief changing or bathroom assistance; not receive necessary activity time or physical therapy; at times not receive their regularly scheduled medicines, and; would not be able to reach staff in a reasonably timely manner.  In addition, residents who required assistance with eating their meals were not receiving necessary assistance in this regard, and residents who required turning were not receiving appropriate assistance.

65.    Based on information and belief, the Defendants' non-medical business and management decisions recklessly left Sweetwater Whitefish Opco, LLC, d/b/a Whitefish Care and Rehabilitation Center underfunded and/or under-insured, resulting in an inability to reasonably operate the facility and/or unable to cover the facility's financial obligations and liabilities.

66.    From a business management standpoint, Defendants either: approved of the lack of reasonable care and conditions at the facility; failed to adequately oversee, inspect, and/or intervene in facility operation; or chose to ignore the evidence and indications of the lack of reasonable care and conditions at the facility.  The Defendants' failure to make reasonable business

26

and management decisions in this regard, and their failure to take corrective action through reasonable business and management decisions once the lack of reasonable care and conditions became evident, constitutes managerial or business negligence.

67.    Defendants knew, or should have known, of the conditions at the facility, the dangers associated with COVID-19 and knew of the need to make non-medical business and management decisions to ensure the provision of reasonable services, supervision, and care, yet Defendants breached their duties and acted with actual malice by either deliberately proceeding to act in conscious, intentional, or reckless disregard of the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie_ Wilkins, Verda Johnson, Adrian Leonard Kautman, and the other similarly impacted individuals, or deliberately proceeding to act with indifference to the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly situated individuals.

68.    Defendant Kyle Shields was additionally personally managerially negligent and his actions were tortious in nature in declining to make appropriate business and management decisions to ensure residents were receiving reasonable care and to prevent COVID-19 infection among staff and residents at the Whitefish Care and Rehabilitation Center despite his firsthand knowledge of conditions and deficiencies at the facility as well as the dangers associated with COVID-19.

69.    Plaintiffs suffered injuries and damages, including for survival and wrongful death, as a direct and proximate result of Defendants' negligence.

### Count 3: Negligence *Per Se*

70.    Plaintiff incorporates by reference all previously plead paragraphs set forth herein.

71.    Defendants owed Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly situated individuals a duty to comply with the Montana Elder and Persons With Developmental Disabilities Abuse Prevention Act, set forth in § 52-3-801 et seq., M.C.A., and federal public health regulations set forth in 42 C.F.R. § 483.80(a), (e), or (f).

72.    Defendants breached its duty to Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly situated individuals by not complying with the foregoing state and federal laws and regulations

73.    The foregoing state and federal laws and regulations were enacted to prevent the abuse and neglect of elderly persons and persons with developmental disabilities. Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman, and the other similarly situated individuals were members of that protected class.

74.    Plaintiffs and the other similarly situated individuals suffered injury and damages, including for survival and wrongful death, as a direct and proximate result of Defendant's negligence *per se*, and their injuries and damages were of the sort which the foregoing state and federal laws and regulations were enacted to prevent.

### Count 4: Breach of Contract and Unjust Enrichment

75.    Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

76.    Defendants entered into, or assumed the terms of, agreements, with attendant covenants of good faith and fair dealing, with Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman, and the other similarly situated individuals (and/or their

representatives) to provide reasonable and adequate care and services which imposed an obligation to establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment, and designed to help prevent the development and transmission of communicable diseases and infections. Defendants breached the agreement by failing to provide reasonable and adequate care and services and failing to establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment, and designed to help prevent the development and transmission of communicable diseases and infections. Defendants' breach of the agreement with Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly situated individuals caused Plaintiffs to suffer injuries and attendant damages, all while unjustly enriching Defendants.

### Count 5: Violation of § 30-14-101 *et. seq.*

### (Montana Consumer Protection Act)

77.    Plaintiff incorporates by reference all previously plead paragraphs set forth herein.

78.    The Montana Unfair Trade Practices and Consumer Protection Act of 1973 prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

79.    Alton Johnson, Berton Pew, Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, and Adrian Leonard Kautman, were, at all times relevant, consumers pursuant to the Montana Consumer Protection Act ("MRCA") § 30-14-101 *et. seq.*, MCA.

80.    Defendants engaged in unfair and/or deceptive acts or practices in the conduct of its commerce or trade, including but not limited to: (1) misrepresenting to Alton Johnson, Berton Pew, and Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum,

Joan Marie Wilkins, Verda Johnson, and Adrian Leonard Kautman (and/or their representatives) the scope of its abilities, services and capabilities of its staff; (2) misrepresenting and/or omitting the conditions of Alton Johnson, Berton Pew, and Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, and Adrian Leonard Kautman to avoid losing them as residents; and (3) continuing to retain Alton Johnson, Berton Pew, and Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, and Adrian Leonard Kautman while concealing dangerous health conditions despite knowing the high risk of injury to Alton Johnson, Berton Pew, and Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, and Adrian Leonard Kautman.

81.     Plaintiffs suffered damages including payment of rents under false promises, physical, emotional, and financial suffering as a result of Defendants' unfair and deceptive acts and conduct towards Alton Johnson, Berton Pew, and Stanley Webber, Ms. DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, and Adrian Leonard Kautman. Plaintiffs are entitled to an award of all damages available under Montana law.

## Count 6: Violation of Plaintiffs' Right to Dignity

82.     Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

83.     Art. II, Sec. 4, of the Montana Constitution provides that, "The dignity of the human being is inviolable." The treatment which Plaintiffs received from Defendants degraded and demeaned them as persons, which treatment failed to acknowledge their worth as persons, and which treatment directly violated their constitutional right to dignity.

84.     Plaintiffs suffered injury and damages as a direct and proximate result of Defendants' violation of their constitutional right to dignity.

## Count 7: Wrongful Death

85.     Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

86.     As a direct and proximate result of the actions and inactions of the Defendants as alleged above, Plaintiffs Alton Johnson, Berton Pew, Stanley Webber, Verda Johnson, Lonny Matthew Sanford, Alison DeSmyter, Adrian Leonard Kautman and the other similarly situated individuals unnecessarily contracted COVID-19, experienced unnecessary complications related to COVID-19, and/or were neglected, abused, malnourished or otherwise mistreated, and have died as a result, incurring that damages alleged herein. Plaintiffs' heirs have suffered the loss of consortium, comfort, care, support, society, and companionship of their deceased loved ones and have incurred the damages as alleged herein.

## Count 8: Conspiracy

87.     Plaintiff incorporates by reference all previously plead paragraphs set forth herein.

88.     Acting in concert, the Defendants conspired to unjustly enrich themselves by drastically reducing funding, staffing, and financial investment at the Sweetwater facility, and/or failing to take corrective actions when the lack of reasonable care and conditions at the facility became evident.

89.     The object of the Sweetwater Defendants conspiracy was to dangerously reduce the cost of operation of the facility and to increase financial returns from the business despite the resulting obvious insufficient care provided to residents and the inability to provide the heightened monitoring, attention, staffing, and care requirements associated with the ongoing pandemic.

90.     Based on information and belief, insufficient income from the operation of Sweetwater Whitefish Opco, LLC, d/b/a Whitefish Care and Rehabilitation Center, was directed towards the reasonable and proper operation of the facility, and was instead channeled, directly or

31

indirectly through other shell entities, to Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett, other entities, and/or other individual owners or shareholders.

91.    Defendants had a meeting of the minds regarding such conspiracy.

92.    Defendants took one or more unlawful overt acts in furtherance of such conspiracy.

93.    Upon information and belief, Defendants' conspiracy in this regard likely extends to their numerous other Sweetwater LLCs and associated care and rehabilitation facilities in Montana and across the Nation.

94.    Defendants conspiracy in this regard, and other as yet unknown unlawful action in furtherance of their conspiracy, caused Plaintiffs harm in an amount to be proven at trial.

### Count 9: Alter Ego

95.    Plaintiff incorporates by reference all previously plead paragraphs set forth herein.

96.    The identity of the Sweetwater Entity Defendants, including Whitefish Care and Rehabilitation Center (d/b/a); Sweetwater Whitefish Opco, LLC; Sweetwater Care MT OPCO, LLC; Sweetwater Care OPCO LLC; Sweetwater Care Propco, LLC; Sweetwater Care Resource, LLC; Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, as well as other Sweetwater related corporate entities referenced in this complaint or yet to be discovered, are one and the same. Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett and/or other individual owners referenced in this complaint or yet to be discovered, operate these companies and facilities with common ownership, shareholders, officers, directors and managers, common offices, centralized accounting, payment of wages by one entity to another entity's employees, common business names, services by employees of one entity on behalf of another entity, and/or unclear, uneven, or self-serving allocation of profits and losses between entities.

32

97. Based on information and belief, insufficient income from the operation of Sweetwater Whitefish Opco, LLC, d/b/a Whitefish Care and Rehabilitation Center was directed towards the reasonable and proper operation of the facility, and was instead channeled, directly or indirectly through other shell entities, to Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett, other entities, and/or other individual owners or shareholders.

98. These Sweetwater Entity Defendants are the alter ego of Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett and/or other individual owners and sharholders yet to be discovered, acting solely as conduits for the performance of their business and as a subterfuge to avoid liability and responsibility for the negligent operation, ownership and management decisions of such facilities, defeat public convenience, justify wrong, or perpetrate fraud on persons dealing with them.

99. The fabricated corporate boundaries and designations of these Sweetwater Entity Defendants should be disregarded, and Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett, and/or the other individual owners yet to be discovered should be held liable for all sums owed to Plaintiffs.

### Count 10: Common Enterprise

100. Plaintiff incorporates by reference all previously plead paragraphs set forth herein.

101. Upon information and belief, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett, and/or the other individual owners yet to be discovered are the primary shareholders, directors, and managers parent companies, or affiliated/associated entities of, the Sweetwater Entity Defendants, the Whitefish Care and Rehabilitation Center, at least three other similar facilities in Montana (Continental Care and Rehabilitation Center in Butte, Park Place Transitional Care and Rehabilitation Center in Great Falls, and Pioneer Care and

Rehabilitation Center in Dillon), multiple skilled nursing centers and residential living facilities in other states, and numerous other active closely held corporations or limited liability companies, organized under the laws of the state of Montana (Sweetwater GF Opco, LLC, Sweetwater GF Propco, LLC, Sweetwater Butte Opco, LLC, Sweetwater Dillon Opco LLC, Sweetwater Dillon Propco, LLC) and other States (Sweetwater Care a/k/a Sweetwater Care MT Opco, LLC, Sweetwater Care Opco, LLC; Sweetwater Care Propco, LLC, and Sweetwater Care Resource, LLC) created with a primary purpose of avoiding liability and responsibility for the operation, ownership and management decisions of such facilities and defeating public convenience. Upon information and belief, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity is an owner, primary shareholder, parent company, or affiliated/associated entity of numerous other Sweetwater LLCs created under the laws of this and other State's for the purpose of owning, managing, operating, and channeling income and profits from these and other similar care facilities across the nation.

102.    Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett, and/or the other individual owners yet to be discovered, operate these companies and facilities as a common enterprise with common management, common employees, common offices, centralized accounting, payment of wages by one corporation to another corporation's employees, common business names, services by employees of one corporation on behalf of another corporation, and/or unclear allocation of profits and losses between entities.

103.    Based on information and belief, insufficient income from the operation of Sweetwater Whitefish Opco, LLC, d/b/a Whitefish Care and Rehabilitation Center was directed towards the reasonable and proper operation of the facility, and was instead channeled, directly or indirectly through other shell entities, to Sweetwater Investment Management, LLC d/b/a

34

Sweetwater Private Equity, James Gamett, other entities, and/or other individual owners or shareholders.

104.    The existence of the Sweetwater Corporate Defendants, Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett, and/or the other individual owners yet to be discovered, as separate entities should be disregarded, and Sweetwater Investment Management, LLC d/b/a Sweetwater Private Equity, James Gamett, and/or the other individual owners yet to be discovered should be held liable for all sums owed to Plaintiffs and the class.

### Count 11: Punitive Damages

105.    Plaintiffs incorporate by reference all previously plead paragraphs set forth herein.

106.    Defendants are guilty of actual malice as, defined in § 27-1-221(2), MCA, in that Defendants had knowledge of facts or intentionally, consciously, and recklessly disregarded facts that created a high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, Alison DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly situated individuals, and Defendants either deliberately proceeded to act in conscious, intentional or reckless disregard of the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, Alison DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly impacted individuals, or deliberately proceeded to act with indifference to the high probability of injury to Alton Johnson, Berton Pew, Stanley Webber, Alison DeSmyter, Lonny Matthew Sanford, Daniel Bell, Debra Tatum, Joan Marie Wilkins, Verda Johnson, Adrian Leonard Kautman and the other similarly situated individuals.

107.    In order to prevent future repetition by these Defendants or others, an award of punitive damages is appropriate to serve as a judicial exemplar of the consequences that befall

those who act with a reckless failure to treat elderly and disabled Montana citizens with the respect and care they deserve and that our society recognizes they are owed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request a judgment against Defendants as follows:

1.     For compensatory damages caused by Defendants to Plaintiffs in an amount to be proven at trial;

2.     For damages, pursuant to MCA § 27-1-513, attendant to survival and wrongful death, including but not limited to loss of consortium, comfort, care, support, society, and companionship;

3.     For treble damages and attorneys' fees pursuant to MCA § 30-14-101 *et. seq.*;

4.     For punitive damages as provided by law in a reasonable amount to be proven at trial;

5.     For costs, interest, and pre-judgment interest as determined by the Court; and

6.     For any and all further legal or equitable relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury in this matter.

Dated this 19th day of November, 2020.

HEENAN & COOK

*/s/John Heenan*
John Heenan
Joe Cook

McGARVEY LAW

*/s/Roger Sullivan*
Roger Sullivan
Ethan A. Welder

36

Dustin A. Leftridge
Jinnifer Jeresek Mariman

*Attorneys for Plaintiffs*

37

# CERTIFICATE OF SERVICE

I, Ethan Aubrey Welder, hereby certify that I have served true and accurate copies of the foregoing Complaint - Amended Complaint to the following on 11-19-2020:

Roger M. Sullivan (Attorney)
345 1st Avenue E
MT
Kalispell MT 59901
Representing: Estate of Alton Johnson, Dana Snyder, Bryan Zipp, Estate of Stanley Webber, Estate of Berton Pew, Randall Johnson
Service Method: eService

John C. Heenan (Attorney)
1631 Zimmerman Trail, Suite 1
Billings MT 59102
Representing: Estate of Alton Johnson, Dana Snyder, Bryan Zipp, Estate of Stanley Webber, Estate of Berton Pew, Randall Johnson
Service Method: eService

Jinnifer Jeresek Mariman (Attorney)
345 First Avenue East
Kalispell MT 59901
Representing: Estate of Alton Johnson, Dana Snyder, Bryan Zipp, Estate of Stanley Webber, Estate of Berton Pew, Randall Johnson
Service Method: eService

Dustin Alan Richard Leftridge (Attorney)
345 First Avenue East
Montana
Kalispell MT 59901
Representing: Estate of Alton Johnson, Dana Snyder, Bryan Zipp, Estate of Stanley Webber, Estate of Berton Pew, Randall Johnson
Service Method: eService

Sweetwater Whitefish Opco, LLC (Defendant)
Service Method: Email

Whitefish Care and Rehabilitation Center (Defendant)
1305 E. 7th Street
Whitefish 59937

Service Method: Email

Reid Crickmore (Defendant)
Whitefish Care and Rehabilitation Center
1305 E. 7th Street
Whitefish 59937
Service Method: Email

Joseph Patrick Cook (Attorney)
1631 Zimmerman Trail
Billings 59102
Representing: Estate of Alton Johnson, Dana Snyder, Bryan Zipp, Estate of Stanley Webber, Estate of Berton Pew, Randall Johnson
Service Method: Email

Electronically Signed By: Ethan Aubrey Welder
Dated: 11-19-2020